# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, | 1:08-cv-1539 LJO GSA |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL ANSWER AND COUNTERCLAIM |
| v. | |
| SENTRY SELECT INSURANCE COMPANY, and Illinois Corporation, | |
| Defendant. | (Doc. 35 and 36) |

## I.  Introduction

Pending before the court is Defendant, Sentry Select Insurance Company's ("Sentry" or "Defendant") Motion for Leave to File a Supplemental Answer to the First Amended Complaint ("supplemental answer") and Counterclaim that was filed on August 17, 2008. (Doc. 35 and 36). On September 1, 2009, Plaintiff, Lexington Insurance Company ("Lexington" or "Plaintiff") filed an opposition to the motion. (Doc. 46). Sentry filed a reply on September 11, 2009.[1] (Doc.

---

[1] Sentry requests that the Court take judicial notice of Exhibits A-O filed in conjunction with its motion and reply. (Docs. 38, 40 and 49). Similarly, Lexington also requests that the Court take judicial notice of Exhibit A and B filed in conjunction with its opposition. (Doc. 46-2). Lexington has also made several evidentiary objections to Sentry's Exhibits (Doc. 46-3). The parties are advised that the Court will not entertain evidentiary objections in a motion to amend the pleadings.

Further, the Court may take judicial notice of any fact which is ". . . not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Several of the Exhibits submitted by the parties are articles, or information obtained from several websites that describe AIG National's organization or the relationship it has with various insurance companies. These exhibits do not contain

48). The Court examined the motion and determined that this matter was suitable for decision without oral argument pursuant to Local Rule 78-230(h).[2] The hearing scheduled for September 18, 2009, was vacated. Upon examining the motion and the third-party complaint, the motion is DENIED.

## II.     Procedural Background

*A. The Underlying Moran Action*

During the early morning of July 12, 2005, Bear Trucking employee Robert Knieling ("Mr. Knieling") parked his long-haul tractor and trailer in an "Emergency Parking Only" portion of a California highway in Ventura County. Erquimedes Moran ("Mr. Moran") drove a utility truck, swerved off the highway, and collided with the rear of Mr. Knieling's trailer causing personal injuries to Mr. Moran and fatal injuries to Daniel Torres ("Mr. Torres"), Mr. Moran's passenger.

Prior to the accident, Sentry had issued a primary commercial liability policy ("Sentry policy") with a $1 million limit of liability for commercial automobile liability coverage to Bear Trucking, Inc. ("Bear Trucking"). Lexington had also issued a stand alone excess liability policy ("Lexington policy") to Bear Trucking with a $4 million per occurrence limit in excess of Sentry's $1 million policy's for automobile liability.

Mr. Moran, Jacqueline Torres (Mr. Torres' widow), and Concepcion Torres (Mr. Torres' mother) pursued an action in Ventura County Superior Court against Bear Trucking and Mr. Knieling (the "Moran Action"). Sentry defended Bear Trucking and Mr. Knieling in the *Moran* action, and funded a combined $67,000 settlement for Mr. Moran and Concepcion Torres' claims and workers' compensation liens prior to trial.

---

information that is generally known within the territorial jurisdiction of the court nor can their accuracy readily verified. Therefore, the parties' requests for judicial notice of exhibits containing this kind of information is denied. The Court has examined all of the pleadings and takes judicial notice of Exhibits A, B, C and D attached to Sentry's Memorandum in Support of Motion for Leave to File a Supplemental Answer and Counterclaim filed on August 17, 2009 ("Sentry's Memoradnum in Support of Motion"). (Doc. 40). All other requests for judicial notice are denied.

[2] The Court carefully reviewed and considered all of the arguments, points and authorities, declarations, objections and exhibits filed by the parties. Omission of a reference to an argument document, objection or paper is not to be construed that this Court did not consider the argument, document, objection or paper. This Court thoroughly reviewed and considered all arguments in this motion.

Jacqueline Torres pursued her wrongful death claim. A trial was held in April 2007 resulting in a $7 million verdict which assessed 80 percent liability against Bear Trucking and Mr. Knieling for a $5.6 million net verdict. On July 9, 2007, the trial court conditionally granted Bear Trucking and Mr. Knieling's motion for a new trial unless Jacqueline Torres accepted a remittitur to $2.6 million. The trial court found error in apportionment of more than 50 percent fault to Bear Trucking and Mr. Knieling. On July 13, 2007, Jacqueline Torres accepted the remittitur in the amount of $2.6.

*B. The Present Lexington v. Sentry Coverage Action*

In the instant action, Lexington contends that Sentry breached its obligation of good faith and fair dealing in conducting the defense of Robert Knieling and Bear Trucking in the Moran action. In particular, Lexington contends that Sentry breached the implied covenant by failing to accept numerous reasonable settlement offers within its limits, failing to consider all settlement offers, failing to attempt to reach a reasonable settlement, and failing to consider the interests of the insured's equally with its own. On July 20, 2007, Lexington demanded that Sentry fully indemnify its insureds for the entire judgment due to Sentry's alleged breach of duty of good faith and dealing.

In August 2007, Bear Trucking and Mr. Knieling filed an appeal in the Moran action, with Sentry and Lexington, posting their respective shares of the appeal bond. A mediation between the remaining Moran Action parties, Sentry Select, and Lexington occurred on November 19, 2007. In March 2008, the Moran action settled for $2.25 million, with Sentry Select paying $1,034,968.20 under the Sentry Policy (its remaining policy plus costs) and Lexington paying $1,215,031.80 under the Lexington policy.

On September 2, 2008, Lexington filed the instant action in the Fresno County Superior Court (Case No. 08 CECG03015AMC) against Sentry, alleging breach of contractual obligations. Lexington filed a first amended complaint ("FAC") on September 4, 2008, alleging equitable subrogation and equitable indemnity causes of action based on Sentry's alleged acts of bad faith in defending Bear Trucking and Mr. Knieling. Lexington is seeking $1,215,031.80 for settlement contributions for Lexington's contributions, $137,485.90 for prejudgment interest, $10,325.40

1  for appeal bond premium, and $2,137.50 for mediation costs.  The FAC also alleges a third cause
2  of action for declaratory relief.  Sentry removed the action on October 10, 2008.
3        *C. The Basis for the Proposed Supplemental Answer and Counterclaim*
4        <u>The Bustos Action</u>
5        According to the allegations in the proposed counterclaim, on or about June 28, 2007,
6  Arthur L. Bustos,[3] filed a complaint for wrongful death, loss of consortium, and other damages in
7  New Mexico, in the San Miguel County Court, against Hamilton Big Country Ford Inc., Joe
8  Narciso Madrid, Dan Regalado, and Lorise Madrid.  (Case No. D412CV200700349) (the
9  "Bustos I action").   Joe Narciso Madrid and Dan Regalado were employees of Hamilton Big
10 Country Ford, Inc., and were alleged to have negligently entrusted a vehicle to Lorise Madrid.
11 The complaint alleged that on or about May 8, 2007, Lorise Madrid went to the Hamilton Big
12 Country Ford dealership to test drive a 2003 Chevrolet Cruise Cab and was under the influence
13 of alcohol and drugs.  While in possession of the vehicle, she lost control of the truck, and caused
14 injury and death to her passenger Margaret Romero.
15      Sentry contends it had issued a commercial auto policy to Hamilton Big Country Ford,
16 Inc., with liability limits of $500,000.00.  Senty also issued a commercial umbrella and excess
17 policy.  However, the umbrella and excess policy did not provide coverage for potential
18 customers of Hamilton Ford.  AIG National issued a policy to Ernesto Lucero and Lorise Madrid
19 with liability limits of $25,000.00.  Sentry provided a defense to its insureds, Hamilton Ford, Joe
20 Narciso Madrid, and Dan Regalado.  Sentry contends that under New Mexico law, AIG
21 National's policy provided primary coverage for Lorise Madrid. The Sentry policy provided
22 coverage for Lorise Madrid on an excess basis only.
23      Sentry alleges that AIG agreed that it was liable for the loss.  However, Sentry contends
24 that AIG National separately negotiated with plaintiff Bustos, and failed to inform Sentry that
25 there had been a settlement demand from plaintiff.  Specifically, Sentry alleges that AIG National
26 did not involve Sentry in settlement negotiations on behalf of Lorise Madrid and that AIG

---

[3] Arthur L Bustos brought this action as a representative of the Estate of Margaret Romero, and on behalf of Rachel Emile Romero, a minor.

4

1  National negotiated a resolution and Assignment Agreement ("Assignment Agreement") and a
2  Stipulated Judgment with plaintiff Bustos on behalf of Lorise Madrid.  The Assignment
3  Agreement resolved Plaintiff's claims against Lorise Madrid, with AIG National to pay its policy
4  limits of $25,000.00 to Plaintiffs.  The Assignment Agreement also assigned all of Lorise
5  Madrid's rights against Sentry and the Hamilton defendants to Bustos.

6  Sentry alleges that the Stipulated Judgment was presented to the court prior to the parties'
7  review.  Based on these events, Sentry alleges that AIG committed bad faith by failing to
8  negotiate a reasonable, good faith settlement, including but not limited to, failing to attempt to
9  settle within policy limits, putting its own interests above the insured's interest, failing to keep
10 Sentry informed of major events, excluding Sentry from involvement with settlement
11 negotiations, and entering into a collusive settlement agreement.

12 Subsequently, on or about November 29, 2007, Bustos filed <u>Bustos v. Senty Select, et al.</u>,
13 Civil Case No. D412-CV-200700349 ("Bustos II") in New Mexico, in the San Miguel County
14 Court, which sought to recover the Stipulated Judgment from Sentry.  On or about April 16,
15 2009, Sentry entered into a confidential settlement agreement with plaintiff and the Bustos action
16 was concluded.

17 Sentry moves to file a supplemental answer and counterclaim against AIG National
18 Insurance Company ("AIG National").   Sentry argues that Lexington and AIG National are both
19 subsidiaries of AIG, Inc., and therefore are sister companies.  The basis of Sentry's proposed
20 amended answer and counter claim is that AIG National allegedly exposed Sentry to liability in
21 excess of policy limits in the Bustos' actions.  Sentry is attempting to name AIG National in its
22 counterclaim arguing that AIG National and Lexington are related entities.  Sentry's defense is
23 that because AIG National allegedly engaged in bad faith dealings in the Bustos action,
24 Lexington is barred from obtaining relief in the instant action based on a theory of unclean hands.
25 Senty argues that to recover in equity, Lexington must do equity.  Sentry's proposed
26 counterclaim against AIG National alleges causes of action for declaratory relief, equitable
27 contribution, and equitable subrogation. <u>See</u>, Sentry's Memorandum in Support of Motion at
28 Exhibit A.  (Doc. 40).

5

1  **III.   Discussion**

2  *A. Legal Standard*

3  Federal Rule of Civil Procedure 13(a) and (b) provides that a party may state a
4  counterclaim against an opposing party. Fed. R. Civ. P. 13(a) and (b). The court may also
5  permit a party to file a supplemental pleading asserting a counterclaim that matured or was
6  acquired by the party after serving an earlier pleading. Fed. R. Civ. P. 13(e).

7  Generally, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may
8  amend the party's pleading once as a matter of course at any time before a responsive pleading is
9  served. Otherwise, a party may amend only by leave of the court or by written consent of the
10 adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a).
11 "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"
12 AmerisourceBergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting
13 Fed. R. Civ. P. 15(a)). However, a court may deny leave to amend due to (1) undue delay; (2)
14 bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by
15 amendment; (4) undue prejudice to the opponent; and (5) futility of amendment. Zucco Partners,
16 LLC v. Digimarc, 552 F. 3d 981 (9th Cir. 2009) citing Forman v. Davis, 371 U.S. 178, 182
17 (1962). Futility alone can justify the denial of a motion for leave to amend. Nunes v. Ashcroft,
18 375 F. 3d 805 (9th Cir. 2004) citing Bonin v. Calderon, 59 F. 3d 815, 845 (9th Cir. 1995). "A
19 proposed amendment is futile only if no set of facts can be proven under the amendment to the
20 pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-
21 Sexton, Inc., 845 F. 2d 209, 214 (9th Cir. 1988).

22 Similarly, Rule 15(d) provides that the court may grant leave to serve a supplemental
23 pleading setting out any transaction, occurrence, or event that happened after the date of the
24 pleading to be supplemented. Fed. R. Civ. P. 15(d). The purpose of Rule 15(d) is to promote
25 judicial economy and to complete the adjudication of the dispute between the parties by allowing
26 the addition of claims which arise after the initial pleadings are filed. Keith v. Volpe, 858 F. 2d
27 467, 473-474 (9th Cir. 1988) citing Rowe v. United States Fidelity & Guaranty Co., 421 F. 2d 937
28 (4th Cir. 1970).

6

*B. Analysis*

In opposition to Sentry's motion, Lexington argues that the amendment would be futile because Sentry's unclean hands defense fails as a matter of law. Moreover, Lexington contends that it is not legally responsible for AIG National's conduct because they are separate corporations. Further, Lexington argues Sentry has not met the requirements to bring a counterclaim under Rule 13 or 14 of the Federal Rules of Civil procedure because AIG is not an opposing party in this litigation.[4] Finally, Lexington contends that there is no basis for the court's jurisdiction over AIG National and that granting leave to file an amended answer asserting the proposed counterclaim would be prejudicial to Lexington.

In reply, Sentry contends that leave to amend a counterclaim to include a third party is permissible under Rule 13(d) because the two claims are related and Sentry has stated an unclean hands defense. Fed. R. Civ. P. 13(d). Morever, under Rule 15(d), supplemental pleadings are favored and are to be liberally construed. Fed. R. Civ. P. 15(d). Sentry argues that hearing the claims at the same time would be efficient and would prevent the possibility of inconsistent results. Furthermore, Sentry argues that at this stage of the proceedings, it only needs to state a claim and does not have to establish the viability of the defense in order to bring the counterclaim. Rather, Sentry contends it only needs to establish that the relationship between the corporations is a factual issue that requires clarification which can be obtained through discovery. Finally, Sentry argues that the Court may exercise supplemental jurisdiction over AIG National as long as diversity is not destroyed.

The Court has reviewed the pleadings and agrees with Sentry's contention that the exact nature of the relationship between AIG National and Lexington is a factual issue and additional discovery would be warranted to determine whether these corporations are separate entities.

---

[4] The Court notes that although Lexington makes arguments related to Rule 14 of the Fed. R. Civ. Proc., Rule 14 is not a basis of Sentry's motion. Fed.R.Civ.P. 14(a) provides for service of a third-party complaint upon a person not a party to the action who is or may be liable to [the original defendant] for all or part of the claim against it. The purpose of Rule 14 is to promote judicial efficiency by eliminating the need for the defendant to bring a separate action against the parties secondarily or derivatively liable to the defendant on account of the plaintiff's claim. Southwest Admin., Inc. v. Rozay's Transfer, 791 F. 2d 769, 777 (9th Cir. 1986). Rule 14 is not applicable to Sentry's request because Rule 14 defines the parameters of impleading third parties who may be secondarily or derivatively liable to the defendant which is not at issue here.

1  However, whether the corporations are separate entities is not relevant to Sentry's's unclean
2  hands defense which is the basis of the counterclaim.
3       Under California law, "[t]he defense of unclean hands arises from the maxim, 'He who
4  comes into Equity must come with clean hands.' The doctrine demands that a plaintiff act fairly
5  in the matter for which he seeks a remedy.  He must come into court with clean hands, and keep
6  them clean, or he will be denied relief, regardless of the merits of his claim." Mendoza v.
7  Ruesga, 169 Ca. App. 4th 270, 279, 86 Cal. Rptr. 3d 610 (2008) quoting  Kendall-Jackson
8  Winery, Ltd. v. Superior Court, 76 Cal.App.4th 970, 978, 90 Cal.Rptr.2d 743 (1999).
9       "This rule however requires that "the party against whom the doctrine is sought to be
10  invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of
11  unrelated improper past conduct."   Pond v. Ins Co. of N. Am. 151 Cal. App. 3d 280, 290, 198
12  Cal. Rptr 517 (Cal. App. 2 Dist. 1984) citing  Moriarity v. Carlson, 184 Cal.App.2d 51, 57, 7
13  Cal. Rptr. 282 (1960).  "The actions of the party alleged to have soiled hands must relate
14  'directly to the transaction concerning which the complaint is made; i.e., it must pertain to the
15  very subject matter involved and affect the equitable relations between the litigants."  Pond v. Ins
16  Co. of N. Am. 151 Cal. App. 3d at 290,  quoting Fibreboard Papers Products Corp. v. East Bay
17  Union of Machinists  227 Cal.App.2d 675, 728, 39 Cal.Rptr. 64 (Ca1. 1 Dist.,1964).
18  "Accordingly, relief is not denied because the plaintiff may have acted improperly in the past or
19  because such prior misconduct may indirectly effect the problem before the court."  Fibreboard
20  Paper Products Corp. V. East Bay Union of Machinists, 227 Ca. App. 2d at 728-729.  Thus,
21  "[t]he doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the
22  plaintiff *in connection with the matter in controversy*." (Emphasis added)  Mendoza v. Ruesga,
23  169 Ca. App. 4th at 279.  See also, Bret Harte Inn, Inc., v. San Francisco, 16 Cal. 3d 14, 28 (1976)
24  (For the unclean hands defense to apply, the plaintiff's inequitable conduct must be directly
25  related to the events for which the plaintiff seeks); 13 Witkin Summary 10th Equity, § 12,  296
26  (2005) (The unclean hands doctrine does not apply to any past misconduct but only applies to
27  misconduct in the particular transaction or connected with the subject matter of the litigation that
28  is a defense).

In this case, Defendant is attempting to assert an unclean hands defense by naming an improper party. Even if discovery reveals that Lexington and AIG National are not separate entities, AIG was not involved in transaction between Sentry and Lexington which is the subject of the controversy before this Court. The Bustos action relates to a separate automobile policy involving an accident occurring in New Mexico against different parties at a different time. Because AIG is not party to the transactions in the Moran matter, the unclean hands defense fails as a matter of law and no set of facts can be proven under the amendment to the pleadings that would constitute a valid defense. Miller v. Rykoff-Sexton, Inc., 845 F. 2d at 214. Sentry has offered no legal autority in support of the proposition that the unclean hands defense is a valid claim given these facts.

Similarly, California courts repeatedly have stressed that the covenant of good faith and fair dealing arises from a contractual relationship and is limited to the parties in that relationship. See Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 108 Cal.Rptr. (1973) (covenant of good faith and fair dealing is implied in every contract but "the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing"); Coleman v. Gulf Ins. Group, 41 Cal.3d 782, 795, 226 Cal.Rptr. 90 (1986) ("Nothing in our Royal Globe decision suggests expansion of the common law cause of action for breach of the covenant of good faith and fair dealing to embrace third party claimants").

Given the above, allowing Sentry to file a supplemental answer and counterclaim would in essence permit Sentry to bring a new claim against an unrelated party in the instant action. While leave to permit supplemental pleadings are favored, Rule 15(d) cannot be used to introduce a distinct and new cause of action. Planned Parenthood of Southern Arizona v. Neely, 130 F.3d 400 (9th Cir. 1997).

For the foregoing reasons, allowing Sentry's leave to amend the answer and add a counterclaim would be futile and is not permissible under Rule 15. Given the Court's ruling regarding the futility of Plaintiff's amendment, it is not necessary to address the remaining issues relating to jurisdiction or whether allowing the amendment would be prejudicial to Lexington.

///

**IV.    Conclusion**

Accordingly, upon a review of the pleadings, Sentry Select's Motion for Leave to File a Supplemental Answer and Counterclaim is DENIED.

IT IS SO ORDERED.

Dated:   **October 5, 2009**                    /s/ **Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE