# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | ) | 1:08-cv-1539 LJO GSA |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER |
| v. | ) | |
| | ) | (Doc. 35) |
| SENTRY SELECT INSURANCE COMPANY, and Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Pending before this Court is Plaintiff Lexington Insurance Company's ("Lexington") Motion for Protective Order initially filed on August 11, 2009. (Doc. 35). The parties agreed, pursuant to stipulation, to continue the hearing to September 2, 2009. (Doc. 47.) On September 14, 2009, Lexington and Defendant Sentry Select Insurance Company ("Sentry") filed a Joint Statement Re Discovery Disagreement on Plaintiff's Motion for Protective Order. (Doc. 50.) That same date, Plaintiff filed the Declaration of Annette Ballatore-Williamson in support of the motion. (Doc. 51.) On September 16, 2009, the Court determined the matter was suitable for

decision without oral argument pursuant to Local Rule 78-230(h).[1]  The hearing scheduled for September 18, 2009, was vacated.  (Doc. 53.)  For the foregoing reasons, the motion is GRANTED.

## PROCEDURAL BACKGROUND

*A. The Underlying Moran Action*

During the early morning of July 12, 2005, Bear Trucking employee Robert Knieling ("Mr. Knieling") parked his long-haul tractor and trailer in an "Emergency Parking Only" portion of a California highway in Ventura County.  Erquimedes Moran ("Mr. Moran") drove a utility truck, swerved off the highway, and collided with the rear of Mr. Knieling's trailer causing personal injuries to Mr. Moran and fatal injuries to Daniel Torres ("Mr. Torres"), Mr. Moran's passenger.

Prior to the accident, Sentry had issued a primary commercial liability policy ("Sentry policy") with a $1 million limit of liability for commercial automobile liability coverage to Bear Trucking, Inc. ("Bear Trucking").  Lexington had also issued a stand alone excess liability policy ("Lexington policy") to Bear Trucking with a $4 million per occurrence limit in excess of Sentry's $1 million policy's for automobile liability.

Mr. Moran, Jacqueline Torres (Mr. Torres' widow), and Concepcion Torres (Mr. Torres' mother) pursued an action in Ventura County Superior Court against Bear Trucking and Mr. Knieling (the "*Moran* action").  Sentry defended Bear Trucking and Mr. Knieling in the *Moran* action, and funded a combined $67,000 settlement for Mr. Moran and Concepcion Torres' claims and workers' compensation liens prior to trial.

Jacqueline Torres pursued her wrongful death claim.  A trial was held in April 2007 resulting in a $7 million verdict which assessed eighty percent liability against Bear Trucking and Mr. Knieling for a $5.6 million net verdict.  On July 9, 2007, the trial court conditionally granted Bear Trucking and Mr. Knieling's motion for a new trial unless Jacqueline Torres accepted a

---

[1] The Court carefully reviewed and considered all of the pleadings, including arguments, points and authorities, declarations, and exhibits.  Any omission of a reference to an argument or pleading is not to be construed that this Court did not consider the argument or pleading.  This Court thoroughly reviewed and considered all arguments in this motion.

remittitur to $2.6 million.  The trial court found error in apportionment of more than fifty percent fault to Bear Trucking and Mr. Knieling.  On July 13, 2007, Jacqueline Torres accepted the remittitur in the amount of $2.6.

### B. The Present Lexington v. Sentry Coverage Action

In the instant action, Lexington contends that Sentry breached its obligation of good faith and fair dealing in conducting the defense of Robert Knieling and Bear Trucking in the *Moran* action.  In particular, Lexington contends that Sentry breached the implied covenant by failing to accept numerous reasonable settlement offers within its limits, failing to consider all settlement offers, failing to attempt to reach a reasonable settlement, and failing to consider the interests of the insureds equally with its own.  On July 20, 2007, Lexington demanded that Sentry fully indemnify its insureds for the entire judgment due to Sentry's alleged breach of duty of good faith and dealing.

In August 2007, Bear Trucking and Mr. Knieling filed an appeal in the *Moran* action, with Sentry and Lexington posting their respective shares of the appeal bond.  A mediation between the remaining *Moran* action parties, Sentry, and Lexington occurred on November 19, 2007.  In March 2008, the *Moran* action settled for $2.25 million, with Sentry Select paying $1,034,968.20 under the Sentry Policy (its remaining policy plus costs) and Lexington paying $1,215,031.80 under the Lexington policy.

On September 2, 2008, Lexington filed the instant action in the Fresno County Superior Court (Case No. 08 CECG03015AMC) against Sentry, alleging breach of contractual obligations.  Lexington filed a first amended complaint ("FAC") on September 4, 2008, alleging equitable subrogation and equitable indemnity causes of action based on Sentry's alleged acts of bad faith in defending Bear Trucking and Mr. Knieling.  Lexington is seeking $1,215,031.80 for its share of the settlement contributions, $137,485.90 for prejudgment interest, $10,325.40 for appeal bond premium, and $2,137.50 for mediation costs.  The FAC also alleges a third cause of action for declaratory relief.  Sentry removed the action on October 10, 2008.

# DISCUSSION

Plaintiff filed the instant motion seeking protection from the following discovery requests or notices served by Defendant: (1) the deposition notice of the person most qualified from Lexington and its question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10; (2) the deposition notices of Donna Doyle, Andrea Palmstrom, Sarah Preston and Althea Garvey (same categories & document request numbers); (3) interrogatory numbers 12 and 13 of the special interrogatories, set one; and (4) numbers 39 through 51 of the request for production of documents, set two. (Doc. 50 at 4; *see also* Doc. 50 at 16-22.) Plaintiff bases its request on the fact that the discovery sought by Defendant is irrelevant to this action, and thus, is not a proper subject of discovery. (Doc. 50 at 6-22.)

In response to Plaintiff's motion, Defendant Sentry replies that Lexington has not met its burden of proving it is entitled to a protective order, that the discovery sought is relevant to Sentry's defenses, and is reasonably calculated to leave to the discovery of admissible evidence. (Doc. 50 at 22-34.)

**A.    Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . .. The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff here seeks a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ..

Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective order the party must make a particularized showing of good cause with respect to any individual document). In determining whether good cause exits for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and non parties. *In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623 (10th Cir. 1982); *see also Wood v. McEwen*, 644 F.2d 797, 801-801 (9th Cir. 1981).

**B.     Analysis**

Lexington argues that its claims handling with respect to the *Moran* action is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and thus is not a proper subject of discovery. This is so, argues Lexington, because an excess carrier has no duty to participate in the defense of an action unless and until the primary policy has been exhausted, and it is improper for an excess carrier to interfere in the primary insurer's handling of the matter. Doc. 50 at 6-8.

Sentry contends that "Lexington's responses may tend to show that Sentry was reasonable in how it handled the underlying *Moran* action" and that it "expects to introduce evidence that its pattern and practice of dealing with Lexington and other excess insurance carriers" reveals excess carriers predicate involvement on whether or not the excess carrier believes a loss has the potential for exceeding policy limits. (Doc. 50 at 26.) Sentry has failed to specifically identify how its requested discovery is relevant to its defenses. It generally asserts the information will show it acted "reasonable" and, apparently, that Lexington acted with something less.

### 1.  *Relevancy*

Lexington asserts that because Sentry cannot "point to the excess insurer's handling of a claim prior to exhaustion of the primary insurance as evidence to refute a bad faith action . . . the information is irrelevant because it does not help to establish any defense" for Sentry. (Doc. 50 at 11.) Lexington ask this Court to issue a protective order prohibiting Sentry from seeking discovery or asking questions in several noticed depositions concerning Lexington's internal claims handling, monitoring or evaluation of the *Moran* action, with the exception of any communication that occurred between Lexington and Sentry during the relevant period. (Doc. 50 at 12.) Lexington argued that it will suffer undue burden, as well as significant additional expense, if it is denied a protective order as requested. (Doc. 51, ¶¶ 4-5.)

As noted above, Sentry contends that the information it seeks is relevant to its defenses because "Lexington's responses may tend to show that Sentry was reasonable in how it handled the underlying *Moran* action," and that Sentry intends to introduce "pattern and practice" evidence concerning Lexington and other excess carriers who determine their own level of involvement in a matter based upon whether or not that excess carrier "believes a case has the potential of a judgment in excess of policy limits." Sentry also contends Lexington's arguments are based upon an incorrect legal premise. (Doc. 50 at 23-34.) Sentry's opposition is unavailing.

Generally speaking, each party has the right to discover "any nonprivileged matter that is *relevant to any party's claim or defense*." Fed. R. Civ. P. 26(b)(1), emphasis added. Additionally, and for good cause, a court may permit discovery of information that is "relevant to the subject matter involved in the action." *Ibid*.

The Court finds the relevance of the information Sentry seeks tenuous at best with regard to any defense Sentry may assert in the instant action. As excess carrier to primary carrier Sentry, Lexington owed no duty related to the *Moran* action unless and until the primary policy was exhausted. *Continental Casualty Company v. Royal Insurance Company*, 219 Cal.App.3d 111, 118-119 (1990). Therefore, how Lexington may or may not have monitored or otherwise handled its own claim file regarding the *Moran* action, prior to the exhaustion of Sentry's policy limits, is irrelevant here. "[T]he standard of relevancy is not so liberal as to allow a party to . . .

explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion v. United Food & Comm'l Workers Union*, 103 F.3d 1007, 1012-1013 (D.C .Cir.1997) (internal quotes omitted). Lexington's internal handling of the claim related to its insureds Bear Trucking and Robert Knieling is not germane to a determination of whether or not Sentry breached its covenant of good faith and fair dealing to the same insureds as the primary carrier.

More particularly, Sentry has failed to articulate how Lexington's adjustment, monitoring, evaluation and valuation, and decisions and conduct regarding rejections on behalf of Bear Trucking, pre-trial settlement negotiations, trial negotiations, communications and reports regarding the *Moran* action, as well as Lexington's policies and procedures in place during the pendency of the *Moran* action, have any bearing on its *own duties* to its insureds. The "primary carrier controls the litigation" (*Continental Cas. Co. v. Royal Ins. Co.*, 219 Cal.App.3d at 118), thus, the duty that is the subject of the litigation is *Sentry's* duty to its insureds, rather any duty of Lexington. In sum, Lexington's handling, monitoring, evaluation, decisions and conduct in the *Moran* action are therefore irrelevant until the primary policy - Sentry's policy - becomes exhausted.

A court may limit discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(2)(C)(iii). For the foregoing reasons, this Court finds that limiting Sentry's discovery to matters other than Lexington's handling of its own claim relative to the underlying *Moran* action outweighs any likely benefit.

**CONCLUSION AND ORDER**

IT IS THEREFORE ORDERED that:

1. Lexington's motion for a protective order regarding the deposition of the person most qualified at Lexington with regard to question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10, is **GRANTED**;

2. Lexington's motion for protective order regarding the deposition of Donna Doyle with regard to question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10, is **GRANTED**;

3. Lexington's motion for protective order regarding the deposition of Andrea Palmstrom with regard to question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10, is **GRANTED**;

4. Lexington's motion for protective order regarding the deposition of Sarah Preston with regard to question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10, is **GRANTED**;

5. Lexington's motion for protective order regarding the deposition of Althea Garvey with regard to question categories 5, 7 through 22, and 24 through 38, and document request numbers 3, 5, 6 and 10, is **GRANTED**;

6. Lexington's motion for protective order regarding interrogatory numbers 12 and 13 of the special interrogatories, set one, is **GRANTED**; and

7. Lexington's motion for protective order regarding numbers 39 through 51 of the request for production of documents, set two, is **GRANTED**.

IT IS SO ORDERED.

Dated: **October 29, 2009**                    /s/ **Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE