1
2
3
4
5
6
7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 LEXINGTON INSURANCE COMPANY,          CASE NO. CV F 08-1539 LJO GSA

12                   Plaintiff,          **ORDER ON RECONSIDERATION OF PROTECTIVE ORDER**

13        vs.                            (Doc. 64.)

14 SENTRY SELECT INSURANCE
   COMPANY,

15

16                   Defendant.
   _____/

17                        **INTRODUCTION**

18        Defendant primary insurer Sentry Select Insurance Company ("Sentry") seeks reconsideration

19 of a protective order to preclude discovery of plaintiff excess insurer Lexington Insurance Company's

20 ("Lexington's") handling and monitoring of an underlying wrongful death action.  Lexington contends

21 that evidence of its handling and monitoring of the underlying wrongful death action is irrelevant and

22 will not lead to admissible evidence to defend Lexington's equitable subrogation claim against Sentry.

23 For the reasons discussed below, this Court DENIES Sentry's reconsideration request.

24                        **BACKGROUND**

25              **The Primary And Excess Policies**

26        Sentry issued to Bear Trucking, Inc. ("Bear Trucking") a primary commercial liability policy

27 ("Sentry policy") with a $1 million limit of liability for commercial automobile liability coverage.

28 Lexington issued to Bear Trucking a stand alone excess liability policy ("Lexington policy") with a $4

                                        1

1  million per occurrence limit in excess of the Sentry policy's $1 million retained amount for automobile
2  liability.

3  ### The Underlying *Moran* Action

4  During the early morning of July 12, 2005, Bear Trucking employee Robert Knieling ("Mr.
5  Knieling") parked his long-haul tractor and trailer in an "Emergency Parking Only" portion of a
6  California highway in Ventura County. Erquimedes Moran ("Mr. Moran") drove a utility truck, swerved
7  off the highway and collided with the rear of Mr. Knieling's trailer to cause personal injuries to Mr.
8  Moran and fatal injuries to Daniel Torres ("Mr. Torres"), Mr. Moran's passenger.

9  Mr. Moran, Jacqueline Torres, Mr. Torres' widow, and Concepcion Torres, Mr. Torres' mother,
10  pursued an underlying Ventura County Superior Court action ("*Moran* action") against Bear Trucking
11  and Mr. Knieling. Sentry defended Bear Trucking and Mr. Knieling in the *Moran* action and funded a
12  combined $67,000 settlement of Mr. Moran and Concepcion Torres' claims and workers' compensation
13  liens prior to trial.

14  Jacqueline Torres pursued her wrongful death claim to an April 2007 trial which resulted in a
15  $7 million verdict, assessing 80 percent liability against Bear Trucking and Mr. Knieling for a $5.6
16  million net verdict. On July 9, 2007, the trial court conditionally granted Bear Trucking and Mr.
17  Knieling's motion for a new trial unless Jacqueline Torres accepted a remittitur to $2.6 million. The trial
18  court found error in apportionment of more than 50 percent fault to Bear Trucking and Mr. Knieling in
19  the absence of evidence that Bear Trucking and Mr. Knieling were more culpable than Mr. Moran. On
20  July 13, 2007, Jacqueline Torres accepted the remittitur.

21  The July 25, 2007 letter of Lexington's coverage counsel contends that Sentry had breached its
22  duty of good faith and fair dealing to its insureds and, in turn, to Lexington to settle within the Sentry
23  policy's $1 million limits and that Sentry was liable for the entire judgment against Bear Trucking and
24  Mr. Knieling. The letter demanded that Sentry "indemnify its insureds for the entire judgment."

25  On August 7, 2007, defense counsel for Bear Trucking and Mr. Knieling appealed the judgment
26  in Jacqueline Torres' favor. On August 9, 2007, Jacqueline Torres cross-appealed the conditional order
27  granting new trial. Lexington paid a $10,325.40 premium toward an appeal bond.

28  With the appeal pending and following mediation, a $2.25 million settlement was reached for

2

the *Moran* action in February 2008.  Sentry paid $1,034,968.20 (its remaining limits plus costs) pursuant to the Sentry policy.  Lexington paid $1,215,031.80 pursuant to the Lexington policy and under reservation of rights.  The appeal and cross-appeal were dismissed with prejudice.

**Lexington's Claims Against Sentry**

Lexington contends that Sentry breached its good faith and fair dealing duties to defend Bear Trucking and Mr. Knieling in the *Moran* action.  In this action, Lexington proceeds on its operative first amended complaint ("FAC") to allege that in defending Bear Trucking and Mr. Knieling, Sentry acted in bad faith "in seeking to protect solely its own interests" by, among other things, failing to: (1) accept reasonable settlement offers within Sentry's limits; (2) attempt to reach a reasonable settlement; and (3) inform Lexington of Sentry's investigation, settlement demands and trial progress.  The FAC alleges (first) equitable subrogation and (second) equitable indemnity causes of action that Sentry is liable for Lexington's contributions of $1,215,031.80 for settlement, $137,485.90 for prejudgment interest, $10,325.40 for appeal bond premium, and $2,137.50 for mediation costs ($1,364,980.60 total).  The FAC alleges a (third) declaratory relief cause of action that Sentry is responsible for "the entire amount of the judgment" and "the entire cost of the mediation and is required to indemnify Lexington for costs incurred with respect to the mediation."

**Discovery Dispute**

Lexington sought a protective order to preclude Sentry's discovery, through depositions, interrogatories and document requests, as to Lexington's claims handling, monitoring and level of involvement regarding the *Moran* action prior to the jury verdict and whether Lexington agreed with Sentry's assessment prior to the jury verdict.[1]  Sentry notes that "Lexington refused to respond to certain questions and redacted a significant amount of information on the documents they [sic] produced."  U.S. Magistrate Judge Gary S. Austin ("Judge Austin") issued his October 29, 2009 protective order ("protective order") to preclude Sentry's discovery on grounds that:

        1.      Lexington's monitoring, handling, evaluation, decisions and conduct prior to exhaustion

                  of Sentry's policy limits is irrelevant in that as an excess insurer, "Lexington owed no

---

[1] Lexington does not challenge discovery as to its communications with Sentry or its internal handling, involvement and monitoring of the *Moran* action after the verdict.

duty related to the *Moran* action unless and until the [Sentry] primary policy was exhausted.  *Continental Casualty Co. v. Royal Ins. Co.*, 219 Cal.App.3d 111, 118-119 (1990)";

2.  "Lexington's internal handling of the claim related to its insureds Bear Trucking and Robert Knieling is not germane to a determination of whether or not Sentry breached its covenant of good faith and fair dealing to the same insureds as the primary carrier";

3.  Sentry failed "to articulate how Lexington's adjustment, monitoring, evaluation and valuation, and decisions and conduct regarding rejections on behalf of Bear Trucking, pre-trial settlement negotiations, trial negotiations, communications and reports regard the *Moran* action, as well as Lexington's policies and procedures in place during the pendency of the *Moran* action, have any bearing on its *own duties* to its insureds" in that the "primary carrier controls the litigation";

4.  The "duty that is the subject of the litigation is *Sentry's* to its insureds, rather any duty of Lexington"; and

5.  "[L]imiting Sentry's discovery to matters other than Lexington's handling of its own claim relative to the underlying *Moran* action outweighs any likely benefit."  (Italics in original.)

Sentry seeks this Court's reconsideration of the protective order in that:

1.  Lexington failed to establish good cause for the protective order;

2.  Sentry's requested discovery is relevant to the merits of Lexington's equitable subrogation claim, in particular, whether its position is inferior to Sentry's, the determination of which depends on whether Lexington "internally agreed with Sentry's decision to try the underlying *Moran* action";

3.  The admissibility of the information sought by Sentry's discovery does not govern whether it is subject to discovery; and

4.  Lexington failed to demonstrate "it will suffer specific prejudice or harm if no protective order is granted."

/ / /

4

**DISCUSSION**

**Reconsideration Standards**

Reconsideration motions are committed to the discretion of the trial court. *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir. 1987). A party seeking reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse a prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987). This Court's Local Rule 78-230(k) requires a party seeking reconsideration to demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."

This Court reviews a motion to reconsider a Magistrate Judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). As such, the court may only set aside those portions of a Magistrate Judge's order that are either clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a); *see also Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir.1991) (discovery sanctions are non-dispositive pretrial matters that are reviewed for clear error under Rule 72(a)). "Under this standard of review, a magistrate's order is 'clearly erroneous' if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Yent v. Baca*, 2002 WL 32810316, at *2 (C.D. Cal. 2002).

"Pretrial orders of a magistrate under § 636(b)(1)(A) . . . are not subject to a de novo determination . . ." *Merritt v. International Bro. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes*, 951 F.2d at 241. A district court is able to overturn a magistrate judge's ruling "'only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 983 (S.D. Cal. 1999) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).

With these standards in mind, this Court turns to Sentry's challenges to the protective order.

5

### Relevance As To Inferior Equitable Position

In the insurance context, "subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1291-1292, 77 Cal.Rptr.2d 296 (1998).  A subrogation action by an insurer is "an independent action in which equitable principles are applied to shift a loss for which the insurer has compensated its insured to one who caused the loss . . . and whose equitable position is inferior to the insurer's." *State Farm Fire & Casualty Co. v. East Bay Municipal Utility Dist.*, 53 Cal.App.4th 769, 778, 62 Cal.Rptr.2d 72 (1997); *see Myers v. Bank of America Nat'l Trust and Savings Ass'n*, 11 Cal.2d 92, 101, 77 P.2d 1084 (1938) (subrogation is equity's "method of compelling the ultimate payment by one who in justice and good conscience ought to make it – of putting the charge where it justly belongs.")

California law permits an excess carrier to recover damages when the primary carrier unreasonably fails to settle a claim. *Continental Casualty*, 219 Cal.App.3d at 117, 268 Cal.Rptr. 193. The California Supreme Court has explained:

> This rule . . . is based on the theory of equitable subrogation: Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted [Citation]. Hence, the rule does not rest upon the finding of any separate duty owed to an excess insurance carrier.

*Commercial Union Assurance Companies v. Safeway Stores, Inc.,* 26 Cal.3d 912, 917-918, 164 Cal.Rptr. 709 (1980).

An element of an insurer's equitable subrogation claim is that "justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer." *Fireman's Fund*, 65 Cal.App.4th at 1292, 77 Cal.Rptr.2d 296.

Sentry argues that if the information subject to Sentry's discovery requests demonstrates that Lexington "agreed with Sentry's decision to try the underlying *Moran* action, then Lexington's equitable position is not inferior to Sentry's, and its equitable subrogation claim will fail."  Sentry notes that it attempts to discover Lexington's "internal comments about the *Moran* action after receiving the

1   requested information from Sentry" in light of redacted notes produced by Lexington.  Sentry concludes

2   that the information it seeks is relevant to "the parties' claims and defenses."

3          Lexington argues that Sentry misapplies the rule that subrogation shifts the loss to a party "whose

4   equitable position is inferior to the insurer's."  Lexington notes that "determining whether *Sentry's*

5   equities are 'inferior' to Lexington's is simply a question of whether Sentry is at fault for causing the

6   loss suffered by Lexington." Lexington explains that whether Sentry is at fault, that is, breached its good

7   faith and fair dealing duties to Bear Trucking and Mr. Knieling, is based on Sentry's conduct, not

8   whether Lexington agreed or disagreed to proceed to trial of the *Moran* action.  "Under California law,

9   an insurer is under an affirmative duty to its insured to settle a claim whenever there is a substantial

10  likelihood of recovery in excess of its policy limits." *Sequoia Ins. Co. v. Royal Ins. Co.*, 971 F.2d 1385,

11  1391 (9th Cir. 1992).

12         Lexington further argues that Sentry's fault to cause Lexington's loss cannot be influenced "by

13  Lexington's internal, undisclosed evaluation" in that an excess insurer "will not be able to force the

14  primary into accepting any settlement which his duty to the insured would not require accepting." *Peter*

15  *v. The Travelers Ins. Co.*, 375 F.Supp. 1347, 1350 (C.D. Cal. 1974).  "If the primary carrier undertakes

16  the representation of the insured, then it has the sole right to negotiate settlements." *Peter*, 375 F.Supp.

17  at 1350.  Lexington contends that an excess insurer's failure to participate or monitor a primary insurer

18  is not an affirmative defense to an excess insurer's subrogation claim against a primary insurer based

19  on bad faith.  With the primary insurer in control of the litigation, "it would have been improper for the

20  insured or excess carrier to step in and try to settle it." *Continental Casualty Co. v. U.S. Fidelity &*

21  *Guaranty Co.*, 516 F.Supp. 384, 392 (D.C. Cal. 1981).

22         Sentry fails to explain how the information it seeks addresses the inferior position element of

23  Lexington's equitable subrogation claim.  Lexington's agreement or disagreement to try the *Moran*

24  action is of no consequence given Sentry's control of the *Moran* action up to the verdict and exhaustion

25  of Sentry's policy limits.  *See Continental Casualty*, 516 F.Supp. at 392 (primary carrier's control of

26  litigation renders improper excess carrier's interference, and excess carrier has no duty to contribute to

27  settlement or defense until primary carrier's policy limits have been exhausted).  Although Lexington's

28  potential agreement to try the *Moran* action may take some of the sting out of Sentry's decision to pursue

a verdict, Sentry was the key decision maker to proceed to trial.  Lexington's pre-verdict conduct is irrelevant given Sentry's control of the *Moran* action as primary carrier.  Sentry demonstrates no clear error in Judge Austin's determination that Sentry's discovery requests fail to support a defense to Lexington's equitable subrogation claim.

### Admissibility Standard

Sentry claims that Judge Austin applied an admissibility standard to determine if the information which Sentry sought is subject to discovery.  Sentry notes that it seeks to discover "whether Lexington internally agreed with Sentry's decision to try the *Moran* action" and not to uncover Lexington's conduct.

Lexington responds that Sentry fails to explain how "the evidence it seeks is even reasonably calculated to lead to the discovery of admissible evidence."  Lexington reiterates that the evidence Sentry seeks is irrelevant and that the proper inquiry "is whether Sentry breached any duties to its insureds."

The scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense."  F.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  F.R.Civ.P. 26(b)(1).

In finding irrelevant the information subject to Sentry's discovery, Judge Austin cited to *Continental Casualty*, 219 Cal.App.3d at 119-120, 268 Cal.Rptr. 193, where the California Court of Appeal upheld exclusion of an excess insurer's conduct:

> Royal [primary insurer] does not claim it had evidence of affirmative misleading conduct on the part of Continental [excess insurer]. Royal sought to prove Continental failed to act – that it failed to participate and monitor Royal's acts. There is no authority that holds an excess carrier should be charged with making sure the primary carrier fulfills its good faith obligations to the insured. Evidence of Continental's conduct, including evidence of industry custom and practices, **was not relevant** under these circumstances.  (Bold added.)

Sentry contends it "should be given the opportunity to discover" whether Lexington engaged in "affirmative and misleading" conduct.  Sentry claims that after Lexington learned of the *Moran* action, Lexington advised that it would "actively" monitor the *Moran* action and requested information about it.  Sentry argues it is "entitled to discovery to determine why Lexington's subsequent silence relative to the *Moran* action after receiving the requested information from Sentry was contrary to its initial

1   representations to Sentry that it would be 'actively monitoring' the case."

2       Sentry offers nothing meaningful that Judge Austin misapplied the scope of discovery under

3   F.R.Civ.P. 26(b)(1). Sentry fails to demonstrate the relevance of the information subject to its discovery

4   requests or that such information is reasonably calculated to lead to discovery of admissible evidence.

5   The record is bare that Lexington engaged in affirmative misleading conduct, especially given absence

6   of its involvement prior to the *Moran* action verdict.   The record suggests that Lexington properly

7   refrained from getting involved until the jury verdict.   "The excess carrier has no duty or right to

8   participate in the defense, absent contract language to the contrary, until the primary policy limits are

9   exhausted." *Continental Casualty*, 219 Cal.App.3d at 119, 268 Cal.Rptr. 193. Sentry fails to satisfy that

10   Judge Austin applied an improper evidentiary standard.

11   **Prejudice Or Harm**

12       Sentry faults Lexington's failure "to meet its burden of proving that specific prejudice or harm

13   will result" if Sentry's discovery is permitted.   Lexington responds that Judge Austin's finding that

14   Sentry's discovery "is not germane" establishes "good cause" for the protective order.   Lexington

15   contends that Judge Austin correctly denied discovery "that would cause Lexington significant additional

16   burden and expense in comparison to the absence of *any* benefit such information would have for

17   Sentry."

18       F.R.Civ.P. 26(c)(1) empowers a court "for good cause, [to] issue an order to protect an party .

19   . . from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding"

20   the discovery.

21       Sentry notes that before Judge Austin, Lexington did not claim "that it will be 'prejudiced or

22   harmed' if it must submit to the discovery, aside from the additional time and expense in preparing for

23   and submitting to depositions on matter which is irrelevant."   Sentry conveniently omits to mention

24   Lexington's position that the absence of prejudice or harm is not controlling given that the information

25   subject to Sentry's discovery requests are beyond F.R.Civ.P. 26(b)(1)'s scope.

26       Sentry is unable to garner information beyond F.R.Civ.P. 26(b)(1)'s scope simply based on a

27   claim of no prejudice or harm to Lexington.   If that were the standard, a party could discover any

28   irrelevant information inducing no prejudice or harm to the producing party.   Sentry's prejudice and

harm notions are a transparent attempt to exceed F.R.Civ.P. 26(b)(1)'s scope.  Sentry fails to establish

that the protective order is clearly erroneous or contrary to law.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES Sentry's request to reconsider the protective order.

Of further note, this Court is unclear whether Lexington has provided responses to unchallenged discovery as to its communications with Sentry or its internal handling, involvement and monitoring of the *Moran* action after the verdict.  To the extent Lexington has not provided such responses, it should do so as soon as practicable to avoid delay.

IT IS SO ORDERED.

**Dated:    November 23, 2009**                   **/s/ Lawrence J. O'Neill**
                                                           UNITED STATES DISTRICT JUDGE