# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, | 1:08-cv-1539 LJO GSA |
| Plaintiff, | ORDER REGARDING DEFENDANT SENTRY SELECT INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER |
| v. | |
| SENTRY SELECT INSURANCE COMPANY, and Illinois Corporation, | (Document 71) |
| Defendant. | |

## INTRODUCTION

Pending before this Court is Defendant Sentry Select Insurance Company's ("Sentry") Motion for Protective Order initially filed on September 18, 2009. (Doc. 56). The parties agreed, pursuant to stipulation, to continue the hearing on the motion until December 4, 2009. (Doc. 60.) On November 23, 2009, Sentry and Plaintiff Lexington Insurance Company ("Lexington") filed a Joint Statement Re Discovery Disagreement on Defendant's Motion for Protective Order. (Doc. 71.) That same date, Lexington filed the Declaration of Annette Ballatore-Williamson regarding the motion. (Doc. 72.) On November 24, 2009, Sentry filed the Declaration of Catherine Moran in support of its motion and a notice of errata. (Docs. 73 & 74.) On November 30, 2009, the Court determined the matter was suitable for decision without oral argument pursuant to Local

1

Rule 78-230(h).[1]  The hearing scheduled for December 4, 2009, was vacated. (Doc. 75.)  For the foregoing reasons, the motion is DENIED.

## PROCEDURAL BACKGROUND

### A. The Underlying Moran Action

During the early morning of July 12, 2005, Bear Trucking employee Robert Knieling ("Mr. Knieling") parked his long-haul tractor and trailer in an "Emergency Parking Only" portion of a California highway in Ventura County.  Erquimedes Moran ("Mr. Moran") drove a utility truck, swerved off the highway, and collided with the rear of Mr. Knieling's trailer causing personal injuries to Mr. Moran and fatal injuries to Daniel Torres ("Mr. Torres"), Mr. Moran's passenger.

Prior to the accident, Sentry had issued a primary commercial liability policy ("Sentry policy") with a $1 million limit of liability for commercial automobile liability coverage to Bear Trucking, Inc. ("Bear Trucking").  Lexington had also issued a stand alone excess liability policy ("Lexington policy") to Bear Trucking with a $4 million per occurrence limit in excess of Sentry's $1 million policy's for automobile liability.

Mr. Moran, Jacqueline Torres (Mr. Torres' widow), and Concepcion Torres (Mr. Torres' mother) pursued an action in Ventura County Superior Court against Bear Trucking and Mr. Knieling (the "*Moran* action").  Sentry defended Bear Trucking and Mr. Knieling in the *Moran* action, and funded a combined $67,000 settlement for Mr. Moran and Concepcion Torres' claims and workers' compensation liens prior to trial.

Jacqueline Torres pursued her wrongful death claim.  A trial was held in April 2007 resulting in a $7 million verdict which assessed eighty percent liability against Bear Trucking and Mr. Knieling for a $5.6 million net verdict.  On July 9, 2007, the trial court conditionally granted Bear Trucking and Mr. Knieling's motion for a new trial unless Jacqueline Torres accepted a remittitur to $2.6 million.  The trial court found error in apportionment of more than fifty percent

---

[1] The Court carefully reviewed and considered all of the pleadings, including arguments, points and authorities, declarations, and exhibits.  Any omission of a reference to an argument or pleading is not to be construed that this Court did not consider the argument or pleading.  This Court thoroughly reviewed and considered all arguments in this motion.

fault to Bear Trucking and Mr. Knieling. On July 13, 2007, Jacqueline Torres accepted the remittitur in the amount of $2.6 million.

### B. The Present *Lexington v. Sentry* Coverage Action

In the instant action, Lexington contends that Sentry breached its obligation of good faith and fair dealing in conducting the defense of Robert Knieling and Bear Trucking in the *Moran* action. In particular, Lexington contends that Sentry breached the implied covenant by failing to accept numerous reasonable settlement offers within its limits, failing to consider all settlement offers, failing to attempt to reach a reasonable settlement, and failing to consider the interests of the insureds equally with its own. On July 20, 2007, Lexington demanded that Sentry fully indemnify its insureds for the entire judgment due to Sentry's alleged breach of duty of good faith and dealing.

In August 2007, Bear Trucking and Mr. Knieling filed an appeal in the *Moran* action, with Sentry and Lexington posting their respective shares of the appeal bond. A mediation between the remaining *Moran* action parties, Sentry, and Lexington occurred on November 19, 2007. In March 2008, the *Moran* action settled for $2.25 million, with Sentry Select paying $1,034,968.20 under the Sentry Policy (its remaining policy plus costs) and Lexington paying $1,215,031.80 under the Lexington policy.

On September 2, 2008, Lexington filed the instant action in the Fresno County Superior Court (Case No. 08 CECG03015AMC) against Sentry, alleging breach of contractual obligations. Lexington filed a first amended complaint ("FAC") on September 4, 2008, alleging equitable subrogation and equitable indemnity causes of action based on Sentry's alleged acts of bad faith in defending Bear Trucking and Mr. Knieling. Lexington is seeking $1,215,031.80 for its share of the settlement contributions, $137,485.90 for prejudgment interest, $10,325.40 for appeal bond premium, and $2,137.50 for mediation costs. The FAC also alleges a third cause of action for declaratory relief. Sentry removed the action on October 10, 2008.

## DISCUSSION

Defendant filed the instant motion seeking protection from the following deposition notices served by Plaintiff: (1) Marcia Tepp; (2) Timothy Kelly; (3) Catherine Moran; (4) Sherry Anderson; (5) Patrick Walsh; and (6) Robert Young, Sr.  More particularly, Sentry asserts the testimony of these witnesses is irrelevant to any party's claim or defense, would result in undue burden to Sentry, and involve high-level corporate officers where lower level employees have provided the same information.  Lastly, Sentry argues the depositions violate the Federal Rules of Civil Procedure because Lexington will have exceeded the ten deposition limit in the absence of a stipulation or court order.  (Doc. 71 at 2.)

In response to Defendant's motion, Lexington replies that each of the witnesses it seeks to depose has personal or unique knowledge of relevant facts not consistent with or identical to other witnesses testimony.  Moreover, Lexington contends it has not exceeded the ten deposition limit because witnesses produced as the "persons most qualified" - regardless of their number - count as one deposition.  (Doc. 71 at 2-3.)

### A.  Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . ..  The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Defendant Sentry seeks a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ..

Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982). A court should not prohibit a relevant deposition "absent extraordinary circumstances" because such a prohibition would "likely be in error." *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979).

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective order the party must make a particularized showing of good cause with respect to any individual document). In determining whether good cause exits for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and non parties. *In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623 (10th Cir. 1982); *see also Wood v. McEwen*, 644 F.2d 797, 800-801 (9th Cir. 1981).

**B.    Analysis**

*Moran, Young & Tepp Depositions*

Sentry asserts the depositions of Catherine Moran, Robert Young, Sr., and Marcia Tepp should be prohibited because these witnesses "have no additional knowledge relevant to the dispute." (Doc. 71 at 10-11.)

*Catherine Moran*

Catherine Moran is an administrative assistant at Sentry who Sentry contends "has no decision-making authority nor capacity" and her only involvement in the underlying action was tangential, indirect and consisted of performing secretarial duties. (Doc. 71 at 11.) Ms. Moran's declaration, filed November 24, 2009, indicates Ms. Moran has been employed at Sentry since October 2005 as an executive assistant. (Doc. 74, ¶ 1.) She provided administrative support and secretarial assistance to "corporate Vice-Presidents." Through that assistance she had indirect

involvement in the underlying *Moran* action.  (Doc. 74, ¶ 3.)  Ms. Moran's declaration states that she received a copy of an email from Dan Jurgella for "clerical and administrative purposes."  (Doc. 74, ¶ 4.)  In conclusion, Ms. Moran declares that she "made no decisions regarding proceeding to trial, appealing the verdict [or] any settlement" in the underlying action.  (Doc. 74, ¶ 5.)

Sentry argues that because Ms. Moran was employed as an administrative assistant without any authority, and because she received only a single email regarding the underlying action, Lexington has no basis to take her deposition.  (Doc. 71 at 12.)

In reply, Lexington states that "an order barring [Catherine Moran's] deposition is unnecessary and untimely as Lexington has clearly expressed that it has no intention of deposing her and has removed her notice in accordance with this intention."  (Doc. 71 at 47.)

Accordingly, the Court denies Sentry's motion for a protective order regarding the deposition of Catherine Moran as moot.

*Robert Young, Sr.*

Sentry asserts that, as a senior underwriter, Mr. Young's knowledge is limited to an email concerning policy renewal and an email "relating to the need to keep the insured apprised of scheduling hearing dates with the court."  Sentry contends Young "lacks knowledge relevant to this dispute."  Sentry states this is so because Young merely forwarded an email on to another Sentry employee without comment.  (Doc. 71 at 12-13.)

Lexington responds that as an underwriter for Sentry, Mr. Young was involved in the underlying action.  More specifically, Lexington points to statements made in an email that pertain to whether or not Sentry adopted a no-pay position despite several "'red flags.'" (Doc. 71 at 34-35.)  Lexington further responds that, with regard to Sentry's duty to keep its clients informed, Mr. Young was informed by another Sentry employee that Bear Trucking was not being kept informed by defense attorney Robert Salley.  Mr. Young then forwarded the email on to another Sentry employee.  Lexington asserts "Mr. Young's testimony may provide further context or substance to the communications documents in the e-mails, or may provide evidence

1  or oral communications that were not documented" on the issue of Sentry's duty to keep its
2  insured properly informed. (Doc. 71 at 35-36.)
3        The Court finds Mr. Young's testimony is relevant. Sentry has not established good
4  cause for issuance of a protective order. Sentry's broad allegations of harm are outweighed by
5  the interests in allowing discovery. *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d at
6  476; *In re Coordinated Pretrial Proceedings*, 669 F.2d at 623; *Wood v. McEwen*, 644 F.2d at
7  800-801. There are no extraordinary circumstances here to prohibit a relevant deposition. *Salter
8  v. Upjohn Co.*, 593 F.2d at 651. The Court denies Sentry's motion for a protective order
9  regarding the deposition of Robert Young, Sr.
10       *Marcia Tepp*
11 Sentry complains Vice President of Transportation Marcia Tepp received only a single
12 email message about the underlying action. Moreover, Sentry indicates that Lexington "has no
13 concrete evidence that Marcia Tepp's involvement . . . is so significant" that a deposition is
14 warranted because Dan Jurgella has already been deposed and any testimony by Ms. Tepp would
15 be "redundant." (Doc. 71 at 13-14.)
16       In response, Lexington contends Tepp was a member of "a protocol group for settlement
17 authority of an insured's $1 million policy limits," and she received information about increasing
18 the reserve in the underlying *Moran* action. Lexington wishes to depose Tepp regarding a
19 severity notice and follow up by Tepp regarding the underlying action as this information may be
20 probative of whether Sentry unreasonably failed to settle the *Moran* action within policy limits.
21 Notably as well, Lexington believes Tepp may be one of the individuals identified by other
22 Sentry personnel as "hesitant" to settle this action. Lastly, some email correspondence in this
23 matter would indicate that Tepp was to be kept apprised of and may have had a significant role
24 regarding the underlying *Moran* action. (Doc. 71 at 36-38.)
25       The Court finds Ms. Tepp's testimony is relevant. Sentry has not established good cause
26 for issuance of a protective order. Again, Sentry's broad allegations of harm are outweighed by
27 the interests in allowing discovery. *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d at
28 476; *In re Coordinated Pretrial Proceedings*, 669 F.2d at 623; *Wood v. McEwen*, 644 F.2d at

800-801. There are no extraordinary circumstances here to prohibit a relevant deposition. *Salter v. Upjohn Co.*, 593 F.2d at 651.   The Court denies Sentry's motion for a protective order regarding the deposition of Marcia Tepp.

### *Anderson, Walsh & Kelly Depositions*

Sentry asserts Sherry Anderson, Patrick Walsh and Timothy Kelly are high level executives that lack unique or superior personal knowledge thus justifying a protective order to prohibit the taking of their depositions.  Sentry relies upon the holding of *Liberty Mutual Ins. Co. v. Superior Court (Frysinger)*, 10 Cal.App.4th 1282 (1993) in support of its position.  (Doc. 71 at 17.)  The Court will address the specific contentions regarding these individuals in turn.

*Sherry Anderson*

Sherry Anderson holds the position of Director of Corporate Claims at Sentry.  She "received only nine emails" and responded to only one.  The email correspondence included updates and status reports regarding the underlying action.  Because the email correspondence in question was also sent to other Sentry personnel who have been deposed, Sentry's position is that Ms. Anderson should not be subject to deposition. (Doc. 71 at 17.)

Lexington explains that the email correspondence involving Anderson may indicate she was a part of a protocol group and may have been hesitant to settle the underlying action as it appears Anderson gave "'permission'" regarding the issue of whether to take the *Moran* matter to trial.  Lexington asserts the evidence it has thus far indicates Anderson was a frequent recipient of information related to the *Moran* action and "the decision making process."  Lexington also contends that Ms. Anderson, the director of a subdivision, is not analogous to a president or vice president of a major national corporation, thus the instant matter is distinguishable from *Frysinger* upon which Sentry relies.  (Doc. 71 at 30-31 & related exhibits.)

*Patrick Walsh*

Patrick Walsh is a former Vice President of Corporate Claims for Sentry.  He received approximately eleven items of email correspondence and responded to one.  Sentry asserts the emails involve "updates as to the underlying action, trial preparation and summaries of witness testimony during the trial," and that the email correspondence in question was also sent to other

8

Sentry personnel who have already been deposed. (Doc. 71 at 17.) Mr. Walsh too, Sentry contends, should not be subject to deposition as a high level executive.

Lexington contends Anderson reports to Walsh, Walsh was identified as an individual who may have been a part of the group that was hesitant to settle the *Moran* action, Walsh participated in a conversation wherein a protocol group meeting was scheduled, Walsh gave "'permission'" to try the underlying action, and Walsh was a recipient of email concerning the defense of the underlying action. (Doc. 71 at 30-31.)

*Timothy Kelly*

Timothy Kelly is the current Senior Director of Corporate Claims at Sentry. According to Sentry's motion herein, although Mr. Kelly "received and responded to more emails than Sherry Anderson or Pat Walsh," his "input" regarding the underlying action was "minimal." Moreover, Sentry asserts that the email correspondence indicates Mr. Kelly "deferred to the authority" of other Sentry personnel and that those persons have been deposed and "these areas have been discovered in detail." (Doc. 71 at 17-18.)

In response, Lexington asserts Kelly's deposition is necessary as Kelly supervised Larry Harlow, received a demand from plaintiff's counsel in the underlying action, discussed the involved policy limits at a possible protocol meeting, discussed defense of the action and involved issues with attorney Bruce Salley, was involved in discussions regarding negotiations of the passenger's claim, attended a March 2007 protocol meeting, was a member of a protocol group that "would suggest a course of action on a case," and was in contact with Gene Dropp who monitored the underlying trial. Lexington specifically notes Mr. Kelly "may have a unique memory of things that were discussed in the protocol meeting." (Doc. 71 at 26-29.)

*Apex Depositions*

> A witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge, but a different result is sometimes reached when the proposed deponent is a busy government official, or a very high corporate officer unlikely to have personal familiarity with the facts of the case.

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2037 (2d. 2009) (internal citations omitted). When a party seeks to depose an official at the

9

highest level or "apex" of a corporation, a court may exercise its authority under the federal rules to limit discovery. *WebSide Story, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, *2 (S.D.Cal. Apr. 6, 2007); *Celerity, Inc. v. Ultra Clean Holdings, Inc.*, 2007 WL 205067, *3 (N.D.Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment") (citing *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.C.R.I. 1985)); Fed.R.Civ.P. 26(b)(1).

"The mere fact . . . that other witnesses may be able to testify as to what occurred at a particular time or place does not mean that a high level corporate officer's testimony would be 'repetitive.' Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred." *First National Mortgage Co. v. Federal Realty Investment Trust,* 2007 WL 4170548, *3 (N.D. Cal. 2007).

A review of *Liberty Mutual Ins. Co. v. Superior Court (Frysinger)*, 10 Cal.App.4th 1282, relied upon by Sentry here, reveals it to be factually distinguishable from the instant matter. In *Frysinger*, plaintiff noticed the deposition of Gary Countryman, president and chief executive officer of Liberty Mutual Insurance Company, asserting that Countryman was "'directly implicated'" in the matter by virtue of Plaintiff's counsel having copied Countryman on two complaint letters. Countryman asserted he had no knowledge of the matter or the plaintiff's claim, and the letters "would have been automatically rerouted to a lower level employee;" Countryman never saw the letters. Moreover, plaintiff did not first attempt to take the deposition of the Liberty Mutual corporation itself, nor any of its lower-level employees involved in this claim.

Here, Lexington has taken the depositions of lower level employees who have indicated that Anderson, Kelly and Walsh - none of whom hold the position of president or chief executive officer - have knowledge of the handling of the *Moran* action. Additionally, in *Frysinger*, Countryman submitted a declaration stating that he was not involved in the handling, supervision or management of claims for Liberty Mutual, and had no knowledge regarding the Frysinger matter. *Liberty Mutual Ins. Co. v. Superior Court (Frysinger)*, 10 Cal.App.4th at 1285. There

are no such declarations here.  In other words, Anderson, Kelly and Walsh have not provided a declaration wherein it is stated that he or she lacks of any knowledge regarding the *Moran* action, or that he or she was not involved in the handling, supervision or management of the claim.

Furthermore, the Court is not convinced that Anderson, Walsh and Kelly are officials or managers at the highest level or "apex" of corporate management to which the particular rules of apex depositions would apply.  Sentry has not provided this Court with any information other than the titles assigned or previously assigned to Anderson, Walsh and Kelly, and simply asserts they "are or were high-level executives at Sentry." (Doc. 71 at 17.)  Lexington, on the other hand, contends these individuals are "the Director of a sub-division, a Senior Director of a sub-division, and the former Vice-President of a sub-division."   Lexington asserts that "[d]irectors and a former vice-president of a sub-division of an insurance company are not akin to the presidents and vice-presidents of major national corporations," the type contemplated for the rules pertaining to apex depositions. (Doc. 71 at 32.)

The Court is inclined to adopt Lexington's position regarding the "level" assigned to these Sentry employees; however, assuming arguendo these individuals could be considered "apex" level officials, the Court finds Anderson, Walsh and Kelly have unique, non-cumulative knowledge of the facts at issue here.  Furthermore, other less burdensome discovery methods have already been employed.  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, *2 (S.D. Cal. Apr. 6, 2007); *First National Mortgage Co. v. Federal Realty Investment Trust*, 2007 WL 417548 at *2 (allowing the depositions of high-level executives *after* depositions of lower-level employees suggested that they might have at least some relevant personal knowledge); *Google v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, *3 (N.D. Cal. 2006) (allowing deposition of corporate founder only after learning from 30(b)(6) witnesses that he may have relevant first hand information).  Sentry's statements that the testimony of these individuals would be repetitive is not sufficient to bar the depositions.  *First National Mortgage Co. v. Federal Realty Investment Trust,* 2007 WL 4170548 at *3.

The Court finds the testimony of Sherry Anderson, Patrick Walsh and Timothy Kelly to be relevant.  Sentry has not met its burden of establishing good cause for issuance of a protective

11

order. Sentry's broad allegations of harm are outweighed by the interests in allowing discovery. *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d at 476; *In re Coordinated Pretrial Proceedings*, 669 F.2d at 623; *Wood v. McEwen*, 644 F.2d at 800-801. As noted above, there are no extraordinary circumstances here to prohibit a relevant deposition. *Salter v. Upjohn Co.*, 593 F.2d at 651. Even were the Court to determine Anderson, Walsh and Kelly were Sentry officials at the highest level, they have not established an unlikelihood of personal familiarity with the matter. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2037 (2d. 2009). The Court denies Sentry's motion for a protective order regarding the depositions of Sherry Anderson, Patrick Walsh, and Timothy Kelly.

### *Number of Depositions Limited to Ten*

#### *Summary of the Parties' Positions*

Sentry contends that Lexington has already completed and/or commenced deposing seven witnesses, and that the "number of depositions noticed to date by Lexington totals **11 witnesses**, which exceeds the maximum allowed under [Federal Rules of Civil Procedure,] Rule 30(a)(2)." (Doc. 71 at 22, emphasis in original.) While Sentry acknowledges that Gary Hoffman, Jonathan Gause, Dan Jurgella, and Robert Salley were designated witnesses pursuant to Federal Rules of Civil Procedure Rule 30(b)(6), it asserts that because Lexington "noticed each of these individuals individually . . . and the questions asked at their depositions went far beyond the [identified] categories, . . . each deposition needs to be counted as one deposition." (Doc. 71 at 22.) Moreover, Sentry asserts that given the fact Mr. Jurgella and Mr. Salley were "subjected to numerous questions on a variety of topics above and beyond the category of questions for which they were designated," those depositions should be separately counted yet again, bringing the total of noticed or taken depositions by Lexington to "**13 witnesses**." (Doc. 22-23, emphasis in original.)

In response to Sentry's assertion that it has exceeded the ten permitted depositions absent leave of court, Lexington contends it has taken only four depositions thus far and it intends to take a total of ten depositions in this matter. Specifically, Lexington took the depositions of (1) James Greaney, (2) John "Sonny" Woodall, (3) Sentry's person most qualified ("PMQ") on

various topics [PMQs included Gary Hoffman, Jonathan Gause, Daniel Jurgella, Bruce Salley], and (4) Larry Harlow.  (Doc. 71 at 39-40.)  Thus, the depositions of Sentry personnel Anderson, Kelly, Walsh, Tepp, Young and Eugene Dropp[2] will bring the total number of depositions to ten.  (Doc. 71 at 40.)  Lexington further contends that Sentry's assertions concerning the conversion of a PMQ deposition to an individually counted deposition in not supported by legal authority.  Next, Lexington argues that the depositions of Sonny Woodall and Jim Greaney should not both be counted against Lexington's ten deposition limit.  Lexington argues that the deposition of Sonny Woodall was "taken solely and exclusively to oppose Sentry's ultimately fruitless Motion for Summary Judgment" that included a declaration of Mr. Woodall "in which he incredulously stated that in signing the settlement agreement of the underlying action, Bear Trucking intended to release any claims that Bear Trucking had against Sentry for breach of contract or breach of the implied covenant of good faith and fair dealing."  Neither of the parties had identified Woodall previously, but Lexington asserts its need to depose Woodall was necessitated by his declaration that he later "admitted was drafted by counsel for Sentry."  Lexington has no intention of calling Mr. Woodall as a witness at trial. (Doc. 71 at 43-44.)  Lastly, because Jim Greaney was identified in initial disclosures by both Sentry and Lexington, Greaney's deposition should not count as against Lexington alone.  Alternatively, Lexington contends that should the Court find it has exceeded the ten deposition limit, it should be granted leave to take the noticed depositions because they are relevant and necessary to its claims.  (Doc. 71 at 45-47.)

    *Discussion*

  Rule 30 of the Federal Rules of Civil Procedure allow for a total of ten oral depositions absent leave of court.  Subdivision (b)(6) of the rule provides, in relevant part, that a "named organization must then designate one or more officers, directors, or managing agents, or designate other person who consent to testify on its behalf . . .."  The Advisory Committee Notes concerning Rule 30(b)(6) plainly states: "A deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition even though more than one person may be designated to testify."

---

[2]Sentry does not object to Lexington taking the deposition of Eugene Dropp.  (Doc. 72 at 3.)

Sentry's assertions that certain Rule 30(b)(6) depositions should count as more than a single deposition is simply unavailing. This Court find that, to date, Lexington has *completed or commenced* the following depositions: James Greaney, John "Sonny" Woodall, the Sentry PMQ and Larry Harlow. Thus, Lexington has taken and/or undertaken a total of four oral depositions thus far.

In light of the currently noticed depositions of Tepp, Long, Anderson, Walsh & Kelly, once those depositions have been completed and/or undertaken, Lexington will *at that point* have completed a total of nine depositions. The parties agree that Eugene Dropp will also be deposed. Should Lexington notice any additional deposition in excess of a total of ten depositions, Lexington will be required to seek leave of court in the absence of a stipulation between it and Sentry.

As to Lexington's position that the deposition of Mr. Woodall should not count against its ten deposition limit, the Court is equally unpersuaded. The mere fact that Lexington had not planned to take Mr. Woodall's deposition until receipt of his declaration that was a part of Sentry's motion for summary judgment is insufficient and unavailing. Equally unpersuasive is Lexington's position that Jim Greaney's deposition should not count against it. Lexington noticed Greaney's deposition and it appears from the transcript provided that counsel for Lexington conducted more extensive questioning of the witness. (*See* Doc. 72, Ex. I.)

In light of the aforementioned, Lexington's request for leave of court to take additional depositions were the court to find "Sentry's method of counting depositions to be correct" (Doc. 71 at 45), is denied as moot.

**CONCLUSION AND ORDER**

For the reasons set forth above, IT IS THEREFORE ORDERED that:

1. Sentry's motion for a protective order regarding the deposition of Catherine Moran is **DENIED** as moot;

2. Sentry's motion for a protective order regarding the depositions of Robert Young, Sr., Marcia Tepp, Sherry Anderson, Patrick Walsh and Timothy Kelly is **DENIED**;

14

3. Lexington's request that the depositions of Sonny Woodall and Jim Greaney not count as against Lexington's ten deposition total is **DENIED**; and

4. Lexington's request for leave of court to take additional depositions is **DENIED** as moot.

IT IS SO ORDERED.

Dated:   **December 16, 2009**                   /s/ **Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE